UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

CHRISTIAN CONTIN,                                                    NOT FOR PUBLICATION

                                    Plaintiff,              **MEMORANDUM & ORDER**
                                                            20-CV-4037 (MKB)
                    v.

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Christian Contin commenced the above-captioned action on August 29, 2020,

against the Commissioner of Social Security (the "Commissioner"). (Compl., Docket Entry No.

1.) Plaintiff seeks review of a final decision of the Commissioner denying Plaintiff's claim for

Social Security disability insurance benefits under the Social Security Act (the "SSA"), pursuant

to 42 U.S.C. § 405(g). (Compl. ¶ 1.) Plaintiff moves for judgment on the pleadings pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure, claiming that Administrative Law Judge

Michelle I. Allen (the "ALJ") failed to properly: (1) weigh the medical opinion evidence; (2)

determine Plaintiff's residual functional capacity ("RFC"); and (3) evaluate Plaintiff's subjective

statements. (Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot."), Docket Entry No. 14; Pl.'s Mem.

in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket Entry No. 15; Pl.'s Reply to Resp. to Mot. ("Pl.'s

Reply"), Docket Entry No. 19.) The Commissioner cross-moves for judgment on the pleadings,

arguing that the ALJ appropriately weighed the medical evidence and Plaintiff's subjective

statements, and based Plaintiff's RFC on the entire record. (Comm'r's Cross-Mot. for J. on the

Pleadings ("Comm'r Mot."), Docket Entry No. 18; Comm'r's Mem. in Supp. of Comm'r Mot.

("Comm'r Mem."), annexed to Comm'r Mot. Docket Entry No. 18-1.)

For the reasons set forth below, the Court denies the Commissioner's cross motion for judgment on the pleadings, grants Plaintiff's motion for judgment on the pleadings, and orders the case be remanded for further administrative action.

## I.   Background

Plaintiff is a forty-six year-old man.  (Certified Admin. R. ("R.") 59, Docket Entry No. 11.)  Plaintiff filed a claim for disability benefits and Supplemental Social Security Income benefits on December 27, 2016, with an alleged disability onset date of October 1, 2016.  (R. 18.)  Plaintiff claimed that he suffered from depression, mood swings, abdominal hernia, and obesity.  (R. 18, 63.)  His claims were denied on March 2, 2017.  (R. 15.)  Plaintiff requested a hearing before an ALJ, (R. 87), which was held on November 7, 2018, (R. 35–58).  By decision dated May 22, 2019, the ALJ denied Plaintiff's claim, concluding that Plaintiff was not disabled within the meaning of the SSA from October 1, 2016 through May 22, 2019.  (R. 26.)  Plaintiff requested review by the Appeals Counsel, (R. 175), which denied his request for review on July 2, 2020, thus making the Commissioner's decision final, (R. 1–8).  Plaintiff filed a timely appeal with the Court.  (Compl.)

### a.   Hearing before the ALJ

Plaintiff appeared in-person at a November 7, 2018 hearing before the ALJ with counsel. (R. 36.)  During the hearing, the ALJ heard testimony from Plaintiff and a vocational expert, Joseph Atkinson (the "VE").  (R. 38–58.)  Plaintiff testified that he had not had a valid driver's license in at least ten years, (R. 40), and had not used public transportation since 2017, (R. 41). Plaintiff traveled to the hearing with his mother in a car.  (R. 40.)  Plaintiff lived with his mom, sisters, grandmother, and his grandmother's husband.  (R. 41.)  Plaintiff had to climb one step to

reach the front door of his house and then walk down approximately ten steps to his bedroom in the basement.  (R. 42.)

Plaintiff is a high school graduate and was previously certified as a security guard.  (R. 42.)  Plaintiff last worked as a food runner in a hotel where he served food to guests from 2009 until 2011, when he developed a hernia.  (R. 43–44.)  He regularly held multiple plates at a time and lifted buffet plates which he estimated weighed approximately thirty pounds.  (R. 44–45.)  Plaintiff also worked as a sales associate in department stores where he "help[ed] customers with the clothing they were trying" and kept in contact with customers after sales were finalized.  (R. 45.)  He did not perform tasks which required him to lift more than ten pounds in those sales associate positions.  (R. 45.)

Plaintiff stopped working in October of 2016.  (R. 46.)  He was living on his own at the time and began to experience depressive symptoms which largely confined him to his bedroom. (R. 46–47.)  Plaintiff "was so depressed" that he did not "want to do anything" and did not "want to get any therapy."  (R. 48.)  He also did not "want to be around people," (R. 49), and "was in complete denial" about his state of mind, (R. 50.)  In February and March of 2016, Plaintiff's sister brought him to a facility to seek help.  (R. 47–48.)  At the facility, Plaintiff received a recommendation for therapy, but did not immediately begin seeing a therapist because he was so depressed that he did not want to do anything and because he was in denial.  (R. 48.)  Plaintiff's family eventually convinced him to seek help from a therapist.  (R. 49.)  Plaintiff's therapist encouraged him "to interact with people," including his family, and "to get friends, to go out, to socialize more," and "be in a positive environment."  (R. 51.)  Plaintiff also started going to the

gym three to four times a week.[1]  (R. 50–51.)  Plaintiff did not take any medication to treat his depression.[2]  (R. 49.)

Plaintiff "changed the way [he] behave[s] around people" and his "whole behavior [has] changed."  (R. 52.)  Plaintiff said that these "major change[s]" began on October 1, 2017 when he "moved from where [he] lived to [his] mother's house."  (R. 52.)  In the year before moving to his mother's house, he spent his time in bed because he was depressed and did not want to do anything.  (R. 52–53.)  Plaintiff explained that he would spend ten to thirteen hours in bed each day and would then get up to make food.  (R. 53.)  During this time, he would only speak to his mother, who visited to check on his wellbeing.  (R. 53.)  Plaintiff lost "between 50 and 80 pounds" over the past year."  (R. 53.)  Plaintiff testified that "[t]hings are getting better," and he had "seen improvements with [his] therapy," but was not "there yet."  (R. 50.)  His "goal is to eventually . . . get back on track, . . . with feeling positive and trying to go back and be that person that [he] was at one point in [his] life where [he] was able to work everyday."  (R. 50–51.)

The VE considered various hypothetical individuals of Plaintiff's age and education level with differing limitations and rendered his opinion as to their ability to perform jobs in the economy.  (R. 54–57.)

---

[1]  Plaintiff took the cab to the gym because it was cheaper than the bus.  (R. 50.)  The cab typically had six customers.  (R. 50.)

[2]  Plaintiff used to have a substance abuse problem.  (R. 51.)  Since 2011, he has not taken drugs that were not prescribed to him.  (R. 51.)  He did not receive treatment for his drug use.  (R. 51.)

b.   **The ALJ's decision**

In a decision dated May 22, 2019, the ALJ found that Plaintiff was not disabled.  (R. 9–30.)  The ALJ determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (R. 18.)  The ALJ also found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), "except [he] can never climb ladders, ropes, or scaffolds or work at unprotected heights."  (R. 20.)  According to the ALJ, the evidence suggested Plaintiff "can tolerate occasional changes in a routine work setting."  (R. 22.)  The ALJ noted that Plaintiff was unable to perform his past relevant work as actually or generally performed.  (R. 25.)  However, based on the VE's testimony, the ALJ "conclude[d] that, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (R. 26.)

II.  **Discussion**

a.   **Standard of review**

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citing *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also Lesterhuis v.*

*Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (same).  Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)).  In deciding whether substantial evidence exists, the court will "defer to the Commissioner's resolution of conflicting evidence." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).  If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision.  *Ewen v. Saul*, No. 19-CV-9394, 2021 WL 1143288, at *11 (S.D.N.Y. Mar. 23, 2021) (citing *Moran*, 569 F.3d at 112); *see also Prince v. Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  "In making such determinations, courts should be mindful that '[t]he Social Security Act is a remedial statute which must be 'liberally applied'; its intent is inclusion rather than exclusion.'"  *McCall v. Astrue*, No. 05-CV-2042, 2008 WL 5378121, at *8 (S.D.N.Y. Dec. 23, 2008) (alteration in original) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

> **b.  The ALJ improperly substituted her lay opinion for expert evidence and did not support the RFC determination with substantial evidence**

Plaintiff claims that the ALJ improperly weighed the medical opinion evidence and also improperly determined his RFC.  (Pl.'s Mem. 5.)  Plaintiff argues that "[t]he ALJ erred by discounting Dr. [Adalgiza] Sandoval's opinions as unsupported."  (*Id.* at 7.)  Plaintiff argues that Sandoval, a psychologist who treated him weekly, made "appropriate medical findings for documenting the severity of a patient's mental impairments," (*id.*), and the ALJ "was required to obtain [Sandoval's] treatment records," (Pl.'s Reply 2).  In addition, Plaintiff claims that the ALJ

6

"erred by focusing on [his] testimony that indicated he had some improvement with treatment."

(Pl.'s Mem. 9.)  Plaintiff argues that the ALJ did not cite evidence that he "had significant or

sustained improvement to a degree that conflicts with the opinions provided by the treating

psychologist," and that such evidence does not exist.  (*Id.*)  Plaintiff also notes that his lack of

psychiatric hospitalization during the period at issue and his ability to engage in some daily

activities of living are not contrary to Sandoval's opinions.  (*Id.* at 9–10.)  Plaintiff contends that

Sandoval's opinions were "based on appropriate medical findings documented over a long period

of regular treatment," and that the ALJ "failed to rely on findings that rise to the level of

substantial evidence contradicting Dr. Sandoval's assessment."  (*Id.* at 10.)  Plaintiff argues that

the ALJ should have treated Sandoval's opinions as controlling pursuant to 20 C.F.R. §

404.1527(c)(2) and § 416.927(c)(2).  (*Id.* at 10–11.)  Plaintiff also asserts that if not given

controlling weight, Sandoval's opinions were entitled to deference in accordance with the factors

— treatment relationship, supportability, consistency, and specialization — outlined in 20 C.F.R.

§ 404.1527(c)(2)–(6) and § 416.927(c)(2)–(6).  (*Id.* at 11.)  Plaintiff notes that Sandoval's

opinions are consistent with the opinions of psychologist Dr. Toula Georgiou and claims that the

"ALJ failed to cite to any medical authority that the available mental status findings could not

cause the mental restrictions described by Dr. Georgiou."  (*Id.* at 12.)  In addition, Plaintiff

argues that "the ALJ improperly relied on her own unadorned lay judgment of the medical record

to determine [his] level of mental functioning."  (*Id.* at 13.)  In support, Plaintiff claims that the

ALJ did not accord "any probative weight" to Sandoval's and Georgiou's opinions, and instead

"*sua sponte* concluded that [he] was mentally limited to making simple work-related decisions;

occasional interactions with supervisors and co-workers; no interaction with the public; and

occasional changes in a routine work setting."  (*Id.*)  Plaintiff also argues that the ALJ did not

properly evaluate his subjective statements, (*id.* at 14), by relying on the "same flawed rationale" she used to evaluate the medical opinion evidence, (*id.* at 16).

The Commissioner contends that the ALJ considered the entirety of the record in assessing Plaintiff's RFC. (Comm'r Mem. 11.)  In support, the Commissioner argues that "the ALJ had good reasons to reject Dr. Sandoval's opinion," and "had sufficient evidence to render a decision without seeking additional records from the doctor." (*Id.*)  First, the Commissioner alleges inconsistencies between Sandoval's opinion and the record evidence.  The Commissioner notes (1) Plaintiff  "did not require emergency room treatment, inpatient treatment, or medications, which conflicted with Dr. Sandoval's opinion that Plaintiff had the worse-possible functioning in every single mental category"; (2) "[t]he marked limitations endorsed on Dr. Sandoval's form . . . conflicted with the clinical findings from consultative examiner Dr. Georgiou, which showed that Plaintiff retained intact memory and only mildly impaired concentration"; (3) Sandoval's belief that "Plaintiff would have a marked limitation in his ability to deal with the public . . . reasonably conflicted with Plaintiff's description of sharing a cab with five other people, and going to the gym four times per week"; and (4) Sandoval's "indicat[ion] that Plaintiff could not travel or use public transportation . . . conflicted with the cab-sharing arrangement." (*Id.* at 12.)  The Commissioner argues that Plaintiff did "not effectively challenge any of the specific inconsistencies identified by the ALJ." (*Id.* at 13.)  Second, the Commissioner argues that "the ALJ was precluded from specifically requesting, let alone demanding Dr. Sandoval's underlying psychotherapy notes," (*id.*), and that the agency did not need the notes to reach a determination on Plaintiff's claims, (*id.* at 14).  Third, the Commissioner contends that "the ALJ was entitled to conclude that the record was as complete as it could be, given the protections for psychotherapy notes, the information already provided by

8

Dr. Sandoval, and Dr. Sandoval's statement that her remaining records were protected." (*Id.* at 15.)  The Commissioner also notes that Plaintiff "bears the burden of demonstrating his limitations, and the ALJ is entitled to rely on a lack of supporting evidence in assessing a claimant's limitations." (*Id.* at 17 (citing *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015)).)

As a general rule, ALJs may not discount the opinions of medical experts in the absence of substantial evidence buttressing the ALJ's determination.  *See, e.g.*, *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (explaining that even though the treating physician's opinion was not entitled to controlling weight, the ALJ was not entitled to substitute his own judgment for the medical opinion and come to an alternative conclusion without substantial evidence in the record to support the conclusion) (first citing *McBrayer v. Sec'y of Health & Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); and then citing *Balsamo v. Charter*, 142 F.3d 75, 80–81 (2d Cir. 1998)); *Balaguer Perez v. Berryhill*, No. 17-CV-3045, 2019 WL 1324949, at *6 (E.D.N.Y. Mar. 25, 2019) ("Without a supporting medical opinion of [the plaintiff's] functional limitations, the ALJ's RFC determination that [the plaintiff] was capable of sedentary work 'constituted an impermissible interpretation of bare medical findings' and is not supported by substantial evidence." (quoting *Guarino v. Colvin*, No. 14-CV-598, 2016 WL 690818, at *2 (W.D.N.Y. Feb. 22, 2016))); *Stubbs v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6607, 2018 WL 6257431, at *6–7 (W.D.N.Y. 2018) (finding the RFC determination unsupported by substantial evidence because the record did not contain a medical opinion in support of the ALJ's conclusion that the plaintiff was capable of light work).  Nevertheless, "under certain circumstances, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Hogans v. Comm'r of Soc. Sec.*, No. 19-CV-2737, 2020 WL 5496114, at *14 (S.D.N.Y. Sept. 11, 2020) (quoting *Santillo v. Colvin*, No. 13-CV-8874, 2015 WL 1809101, at

9

*10 (S.D.N.Y. Apr. 20, 2015)).  "These include (a) where the medical evidence shows relatively little physical impairment, and (b) where the record contains sufficient evidence from which an ALJ can assess the RFC."  *Thomas M. N. v. Comm'r of Soc. Sec.*, No. 19-CV-360, 2020 WL 3286525, at *4 (N.D.N.Y. June 18, 2020) (citing *Penny Ann W. v. Berryhill*, No. 17-CV-1122, 2018 WL 6674291, at *4 (N.D.N.Y. Dec. 19, 2018)); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8–9 (2d Cir. 2017) ("Where . . . 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,' a medical source statement or formal medical opinion is not necessarily required.'" (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013))).[3]

The ALJ's RFC determination was not supported by medical evidence.  The ALJ determined that Plaintiff could perform light work, with the exception of working at unprotected heights and climbing ladders, ropes, or scaffolds.  (R. 20.)  In reaching that decision, the ALJ discounted evidence of Plaintiff's mental impairments and concluded that there was no evidence "of any significant abnormalities of cognitive functioning, thought processes, thought content or speech."  (R. 22.)  The ALJ found that "the medical evidence did not support [Plaintiff's] allegations of symptom severity and resulting functional limitations to the degree that he alleged."  (R. 21.)  However, the ALJ's finding was directly contradicted by the reports of Dr.

---

[3]  On January 18, 2017, the Social Security Administration published a final rule that changed the protocol for evaluating medical opinion evidence.  *See* Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404, 416).  The "new regulations apply only to claims filed on or after March 27, 2017."  *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018).  Because Plaintiff's claim was filed prior to that date, the Court refers to versions of the regulations that were in effect prior to March 27, 2017.  *See id.*; *see also White v. Berryhill*, No. 17-CV-4524, 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the [c]ourt reviews the ALJ's decision under the earlier regulations because the [p]laintiff's application was filed before the new regulations went into effect." (citation omitted)).

Sandoval and Dr. Georgiou.  Dr. Georgiou diagnosed Plaintiff with anxiety disorder.  (R. 336.)
Dr. Sandoval likewise reported that Plaintiff suffered from severe psychotic symptoms, (R. 339),
and reduced intellectual functioning, (R. 340–43).  Given Dr. Sandoval's weekly examinations of
Plaintiff for more than one year, (R. 339), Dr. Sandoval's opinion was owed significant
deference.  *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The opinion of a
treating physician is accorded extra weight because the continuity of treatment he provides and
the doctor/patient relationship he develops place[s] him in a unique position to make a complete
and accurate diagnosis of his patient." (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2
(2d Cir. 1983) (per curiam))).  The ALJ's decision to not assign Dr. Sandoval's opinion any
deference and substitute her own opinion constitutes reversible error.  *See Ostrom v. Comm'r of
Soc. Sec.*, No. 14-CV-268, 2015 WL 1735097, at *12–14 (N.D.N.Y. Apr. 16, 2015) (finding
error where the ALJ rejected the "only competent medical opinions of record" and instead
"substituted her own judgment" of the medical findings).

The ALJ's RFC determination was not supported by substantial evidence because the
ALJ erred in assigning Dr. Sandoval's medical opinion little weight.  Accordingly, the Court
grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-
motion for judgment on the pleadings.[4]  *Mantovani v. Astrue*, No. 09-CV-3957, 2011 WL
1304148, at *4 (E.D.N.Y. Mar. 31, 2011).

---

[4]  Because the Court finds that the ALJ erred in disregarding Dr. Sandoval's opinion, the
Court declines to address Plaintiff's other arguments.  *See Smith v. Colvin*, 17 F. Supp. 3d 260,
263 n.4 (W.D.N.Y. 2014) (declining to address an alternative ground for remand "[b]ecause the
court finds plaintiff's argument regarding the ALJ's assessment of the medical evidence to be
determinative").

### III.  Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings.  The Commissioner's decision is vacated, and this action is remanded for further administrative proceedings consistent with this opinion, pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk of Court is directed to close this case.

Dated:  September 14, 2023
       Brooklyn, New York

                                        SO ORDERED:


                                       _____s/ MKB_____
                                       MARGO K. BRODIE
                                       United States District Judge